(No. 5663.  Decided July 20, 1905.)

NOVELTY MILL COMPANY, *Appellant,* v. L. A. HEINZERLING and THE AMERICAN BONDING COMPANY OF BALTIMORE, *Respondents.*[1]

CONTRACTS — BREACH — DEFECT IN BUILDING — SPECIFICATIONS AT FAULT.  In an action for the breach of a building contract, it is immaterial that the contractor drew up a clause in the specifications requiring tamping of concrete piers, which it is claimed by him caused the defects in the building, where the terms of the contract were not ambiguous, and there is no claim of fraud or overreaching.

SAME—DEFECTS DUE TO PLAINTIFF'S SUPERINTENDENT—PRINCIPAL AND AGENT—PROOF OF AUTHORITY—DECLARATIONS OF AGENT.  In an action against a contractor for defects in a building constituting a breach of the contract, in which the defendant claims that the defects were caused by plaintiff's expert superintendent who daily directed the work, testimony of the superintendent concerning his orders and directions about the work, tending to establish his authority, is admissible in connection with proof that the secretary of the plaintiff was often present and heard the directions without denying his authority; and the question of his agency was for the jury.

1Reported in 81 Pac. 742.

CONTRACTS—BREACH—DEFECTS CREATED BY COMPLIANCE WITH CONTRACT—EVIDENCE—SUFFICIENCY—QUESTION FOR JURY. In an action for damages for the breach of a building contract, evidence tending to show that the defect in the building was caused by tamping concrete piers in the manner required by the contract, and insisted upon by the plaintiff, and that defendant substantially complied with the contract, raises a question for the jury, precluding the direction of a verdict for plaintiff.

SAME—INSTRUCTIONS. In such a case the contractor would not be liable for damages caused by tamping the concrete in the manner required by the contract, although it was faulty workmanship to tamp it, unless the jury find that he failed to do the tamping as it should have been done.

INDEMNITY—ACTION ON BOND—NOTICE OF DEFECT AND LIMITATION OF ACTION. In an action upon an indemnity bond guaranteeing a building contract, it is necessary for the plaintiff, if it has knowledge of the defect, to give notice and bring suit within the time limited in the bond.

Appeal from a judgment of the superior court for King county, Albertson, J., entered November 26, 1904, upon the verdict of a jury rendered in favor of the defendants, in an action for damages for the breach of a building contract. Affirmed.

*Andrew J. Balliet* and *James Kiefer*, for appellant, contended, among other things, that a contractor, erecting a structure according to plans and specifications, is liable for failure to do the work in a workmanlike manner. *Hunt v. Pennsylvania R. Co.*, 51 Pa. St. 475; *Clark v. Pope*, 70 Ill. 128; *Trustees of Monroe Female University v. Broadfield*, 30 Ga. 1; *School Trustees v. Bennett*, 27 N. J. L. 513, 72 Am. Dec. 373; *Smith v. Clark*, 58 Mo. 145.

*Ballinger, Ronald & Battle*, and *F. E. Brightman*, for respondent Heinzerling. The contractor was not liable if the defect was due to tamping required by the contract. *Beswick v. Platt*, 140 Pa. St. 28, 21 Atl. 306.

*Charles S. Hills* and *Allan C. MacDonald*, for respondent American Bonding Company.

HADLEY, J.—This is an action upon a contractor's bond. The amended complaint avers that the defendant Heinzerling entered into a written contract to construct for the plaintiff a warehouse, in accordance with plans and specifications attached to the contract. The specifications provided that the building should rest upon forty-five concrete piers, and the latter were also to be constructed by said defendant. It was provided that, in constructing each pier, four piles should be driven to a good foundation, and cut off from one to three feet above ground, the earth to be excavated around the piling one foot below the surface, and a casing built around the same made of two-inch lumber, the casing having a dimension of five feet by five feet at the base and three feet by three feet at the top, inside. It was also required that the casing should be filled with concrete made with five parts sand and gravel and one part good Portland cement, said concrete to be well tamped.

The plaintiff alleges that the contractor did not build the piers in accordance with the specifications, in that he failed to use a sufficient quantity of cement, and that he did not use a good quality of Portland cement; that he failed to properly tamp and place the concrete; that he threw the concrete, when mixed, into deep water so that the cement became separated from the sand and gravel; that, in consequence of such defaults on the part of the contractor, the piers are now falling down, and the warehouse is falling by reason thereof, and has become unsafe and useless. It is alleged that the contractor is financially unable to rebuild said piers and make said building such as is contemplated by the contract; that he has refused to do so; and that plaintiff will be obliged to reconstruct the same at an expense of $2,500, for which amount judgment is demanded. A supplemental complaint filed since the commencement of the action alleges that the piers have been rebuilt, and demands $1,500 damages in addition to the demand in the principal complaint.

The defendants answered separately, and each denied that there was any failure to construct the piers in accordance with the contract and specifications. They also each affirmatively averred that, during the whole period of the construction, the workmanship and the material therein were under the direction, supervision, and approval of the officer or agent of the plaintiff, placed in charge of the work by the latter; that at said time the plaintiff informed the contractor that said agent was an expert as to work of that character; that, after the completion of the contract, the plaintiff withheld payment for ten days until the work was further wholly inspected and approved by other competent experts, selected by the plaintiff; that, having selected such experts, the plaintiff caused the work to be thoroughly examined by them, and they found that the entire work was done strictly in accordance with the plans and specifications, and that thereupon the plaintiff accepted the work. Other affirmative defenses interposed by the surety company we believe it is unnecessary to set out here. The cause was tried before a jury, and a verdict was returned for the defendants. Plaintiff moved for a new trial, and the same was denied. Thereupon judgment was entered for the defendants, and the plaintiff has appealed.

Appellant's counsel asked a witness who it was who drew the specifications for the piers. The respondents objected, and the court sustained the objection. This is assigned as error. It was claimed by the respondents that the tamping of the concrete under water had caused the defect in the piers, and expert witnesses testified to that effect. It was also claimed that the contractor was required by the contract to tamp it, inasmuch as the specifications contained the following: "Said concrete to be well tamped." Appellant desired to show that the specifications were drawn by the contractor himself, but we are unable to see that such fact became material inasmuch as no fraud or overreaching was charged by appellant. The terms of the con-

tract were plain and unambiguous. It is not claimed that appellant did not have ample opportunity to read and understand it before signing, and it is therefore immaterial who drew it.

Error is urged upon the court's rulings in not sustaining objections to the testimony concerning the orders and directions about the work, given by the miller Robertson. It was testified that Robertson was about the work daily, that he gave many directions concerning the work, and frequently ordered further tamping of the concrete after the contractor had ceased to tamp it. It is urged that this testimony was objectionable, for the reason that the agency of Robertson for appellant could not be established by his own acts and declarations. Standing alone, they were doubtless insufficient, but it appeared that he was often about the work in company with the secretary of appellant corporation, the officer who had executed the contract for the appellant, that this officer frequently heard Robertson giving the directions concerning tamping and other things, and that he at no time intimated to the contractor that Robertson was not authorized to so direct. Under such circumstances, the question as to Robertson's authority and agency was for the jury, and the objections were properly overruled.

A number of assignments of error relate to instructions given, and to the refusal to give others requested by appellant. It is urged that it was error to refuse to instruct the jury to return a verdict for appellant in the full sum demanded. We think such an instruction would have been erroneous, in view of the evidence. There was evidence to the effect that the piers were weakened by too much knocking and jarring, which ruptured the crystals of the cement while they were becoming set in the salt water; that the concrete was jarred by the tamping; that the contract called for the tamping; and that appellant not only observed the tamping and approved thereof, but insisted upon even more of it than the contractor was disposed to give; that appellant

itself placed a heavy weight upon the floor over the piers before the cement was sufficiently set, and that this also had the effect of jarring and weakening the piers. There was sufficient evidence of a substantial compliance with the terms of the contract to leave the jury to say whether the piers were weakened by reason of any default or neglect on the contractor's part.

Appellant further insists that it was error to refuse to give the following instruction:

"Under the contract and specifications, it was the duty of Heinzerling to know how to tamp the concrete in boxes for the piers, and if the jury finds that it was faulty workmanship to tamp the concrete in the water, and that it was so tamped, and that such tamping caused the defects in the piers, it was the negligence and unskillfulness of Heinzerling which caused the defects in the piers, and plaintiff is entitled to recover."

In view of the terms of the contract, which required tamping, we think the instruction asked was erroneous.

The following instruction was given:

"Now, with regard to the charge of improper tamping: As I have said, if the contractor did what he was required to do by the contract, he would not be liable for any damage because of a fault in the contract itself, and if he was required by the contract to tamp this concrete, and if the fall of the wharf was occasioned by the tamping of the concrete, the plaintiff could not recover, because under the contract he was required to tamp the concrete; but it is for you to say, under the evidence, whether in tamping the concrete he did it in the way that it should have been done, whether there was any defect in the tamping of this concrete, and if you should find from the evidence that he did not tamp the concrete as it should have been done, or did not put it in place as it should have been put there, or did not mix it in the proper proportions, or did not use a sufficient quantity, and if you should find that on any of these accounts or for any of these reasons, the wharf fell, and the plaintiff was put to the expense of reconstructing it, then you would find for the plaintiff to the extent of $4,000, if

you should be satisfied that the plaintiff incurred that expense in that way."

We think the above instruction comprehensively and correctly covered the subject of tamping, under the issues and evidence.

The complaint made under the fourth and fifth assignments of error we shall not discuss, inasmuch as we think the court, in general effect, gave instructions covering the same points contained in the appellant's requests; and we think the same is true of the sixth, fifteenth, and seventeenth assignments, to the extent, at least, that no prejudicial error is involved therein.

Error is urged upon the refusal to give the following instruction:

"Any knowledge or information which the witness Robertson, the miller and employee of the plaintiff company, may have gained as to the methods employed by the defendant Heinzerling in the construction of the forty-five concrete piers in question was not the knowledge of the plaintiff company, and cannot in any manner bind or control the plaintiff corporation, and the jury are instructed to disregard and not consider any such knowledge or information of said witness Robertson."

We have already said that the question of Robertson's agency was, under the evidence, for the jury. The above requested instruction would have taken that question from the jury, and it was therefore properly refused.

We think the instruction criticized under the eighth assignment of error was not erroneous. It stated, in effect, that the fact that the miller of appellant company was around the work and saw how it was being done, and the fact that he may have undertaken to direct how it should be done, would not charge the mill company with notice, unless the miller was authorized by the company to look after the work, and was held out as its agent for that purpose, which latter fact the jury were to determine from the evidence.

We find no error in the instruction concerning notice to the bonding company as to a breach of the contract. It was one of the defenses interposed by the bonding company that, if there was any defect in the work, the mill company had knowledge of it long before it notified the bonding company thereof. The bond required that immediate notice should be given, and that suit should be brought within six months after the first breach. The instruction made it clear that, if the jury should find from the evidence that the mill company had knowledge of the defect, then it was its duty to at once notify the bonding company, and bring its suit within six months thereafter. The instruction left the jury to find whether appellant had knowledge of the defect, and failed thereafter to act in accordance with the terms of the bond.

Complaint is made that some of the instructions were misleading and confusing in their terms. We do not find them so, and we believe the instructions, as a whole, fairly covered the law of the case, under the issues and evidence.

We think it was not error to deny the motion for a new trial. The fact was fully submitted to the jury whether the defect in the piers was due to any violation of the terms of the contract on the part of the contractor. The verdict established that it was not caused by a breach of the contract, and we shall not disturb it. The judgment is affirmed.

MOUNT, C. J., FULLERTON, CROW, ROOT, RUDKIN, and DUNBAR, JJ., concur.